IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 14-23-BU-DLC |
| Plaintiff/Respondent, | CV 18-79-BU-DLC |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| ANGEL ITURBE-GONZALEZ, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Angel Iturbe-Gonzalez's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255.  Iturbe filed his original motion *pro se* but is now represented by counsel.  Counsel's amended motion (Doc. 110) entirely supersedes the original motion.  *See* Order (Doc. 100) at 2–3 ¶ 3.

On April 6, 2020, the Court denied Claims 1 and 3 of the amended motion. Only Claim 2 remains.

## I.  Background

On April 10, 2014, a highway patrol officer stopped Iturbe on Interstate 90 near Bozeman on suspicion of speeding in a construction zone.  About 31 minutes into the stop, Iturbe consented to permit a drug dog to sniff the vehicle's exterior. According to the officer-handler, the dog alerted.  Officers seized the vehicle and,

on April 11, obtained a warrant to search it.  They did not find anything.  They arranged to return Iturbe's vehicle to him.  When Iturbe did not show up to claim it, officers left the keys with an attorney of his choice.

On April 14, before anyone retrieved the vehicle, a Gallatin County detective received information from a federal agent indicating that Iturbe was a suspect in a California drug robbery involving large quantities of cocaine and methamphetamine and $195,000 in cash.  The detective obtained another warrant to search the vehicle.  This time, in a compartment under the floorboard, officers found 16 pounds of cocaine, four pounds of methamphetamine, and four pounds of heroin.

On September 18, 2014, a grand jury indicted Iturbe on one count of conspiring to possess heroin and methamphetamine[1] with intent to distribute them, a violation of 21 U.S.C. § 846 (Count 1); and one count of possessing the same substances with intent to distribute them, a violation of 21 U.S.C. § 841(a)(1) (Count 2).  The quantity of each controlled substance, considered separately, was large enough to subject Iturbe to a ten-year mandatory minimum sentence if he were convicted on either count.  *See* 21 U.S.C. § 841(b)(1)(A)(i), (viii).

Iturbe was arrested in Los Angeles on January 22, 2015.  *See* Warrant

---

[1] The Indictment also charged Iturbe with cocaine, but that allegation was dismissed before trial began.  *See* Mot. (Doc. 37); Minutes (Doc. 41).

Return (Doc. 8).  He appeared in this Court on February 18, 2015.  Assistant

Federal Defender John Rhodes was appointed to represent him.  *See* Minutes (Doc.

9); Order (Doc. 12).

Iturbe moved to suppress the fruits of the traffic stop, arguing that the stop

amounted to a seizure before probable cause was established.  The Court

determined that an evidentiary hearing was not necessary.  After full briefing, the

motion was denied, based largely on the video recording taken from the highway

patrol vehicle's dashboard camera.  *See* Mot. to Suppress & Br. in Supp. (Docs. 18,

19); U.S. Resp. to Mot. (Doc. 23); Order (Doc. 27); *see also* Gov't Trial Ex. 1

(Doc. 56-13).[2]

Jury trial commenced on April 27, 2015.  On April 29, 2015, the jury found

Iturbe guilty on both counts.  *See* Minutes (Docs. 41, 44, 51); Redacted Verdict

(Doc. 54) at 1–4.

At sentencing, using the standard guidelines method, the heroin and

methamphetamine were converted to an equivalent quantity of marijuana to arrive

at a base offense level.  *See* U.S.S.G. § 2D1.1 cmt. n.8(B), (D).  Iturbe was held

responsible for 30,000 to 90,000 kilograms of marijuana.  His base offense level

was 36.  Despite his decision to stand trial, he received a two-point downward

---

[2]  The Court's Jury Evidence Recording System ("JERS") retains a copy of the trial
exhibits.  Original exhibits are retained by the parties.

adjustment to reflect his acceptance of responsibility.  *See* Sentencing Tr. (Doc. 75) at 27:8–27:18; U.S.S.G. § 3E1.1 cmt. n.2.  With a total offense level of 34 and a criminal history category of I, his advisory guideline range was 151 to 188 months.  *See* Statement of Reasons (Doc. 70) at 1 § III.  Iturbe was sentenced to serve 151 months in prison, to be followed by a five-year term of supervised release.  *See* Judgment (Doc. 69) at 2–3.

Iturbe appealed.  Represented by new counsel, he contested the admission of certain evidence at trial, a jury instruction, and the denial of safety valve relief at sentencing.  On February 14, 2017, the Court of Appeals affirmed his conviction and sentence.  *See* 9th Cir. Mem. Disp. (Doc. 86) at 2.  Iturbe petitioned the United States Supreme Court for a writ of *certiorari*, but the petition was denied on January 8, 2018.  *See* Clerk Letter (Doc. 91) at 1.

Iturbe timely filed his motion under 28 U.S.C. § 2255 on December 4, 2018.  *See* 28 U.S.C. § 2255(f)(1); Mot. § 2255 (Doc. 92) at 6 ¶ C.

## II.  Claim 2

Because its resolution depended on facts outside the record, the Court set a schedule for discovery and briefing on this claim.  *See* Order (Doc. 113) at 10–11.  It is now ready for decision.

Iturbe alleges that trial counsel unreasonably failed to explain the nature of a plea offer by the United States.  He also claims he would have accepted the offer if

4

he had understood it.  *See* Am. Mot. (Doc. 110) at 5–8; Iturbe Decl. (Doc. 93-2) at 5–6 ¶¶ 28–29.

Iturbe rejected the plea offer, stood trial, was convicted, and received a 151-month sentence.  *See* Judgment (Doc. 69) at 1–2.  The plea offer he rejected would have been binding on the Court.  If Iturbe had accepted the offer and the Court had accepted the agreement, Iturbe would have received a sentence of 57 months.  *See* Prop. Plea Agreement (Doc. 99-2) at 2–3 ¶ 3; Fed. R. Crim. P. 11(c)(1)(B), (C).

This claim is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Lafler v. Cooper*, 566 U.S. 156, 162–64 (2012).  To prevail, or at least obtain an evidentiary hearing, Iturbe must allege facts supporting an inference that counsel's performance was objectively unreasonable and that, had counsel performed competently, Iturbe would have obtained a better outcome.  *See Strickland*, 466 U.S. at 687–88, 694.

Iturbe's original declaration, filed with the § 2255 motion he filed *pro se*, asserted:

> I . . . did not understand that the final plea agreement . . . would limit my time in prison to 57 months.  Other inmates kept telling me that the plea deal might say 57 months but, at sentencing, the court could give me 20 years — that it happens all the time.  Mr. Rhodes never explained that this type of plea deal is different and it locked a judge into the agreed sentence.  He never stressed that part.  If I had understood that, I would have accepted the plea agreement for 57 months.

Iturbe Decl. (Doc. 93-2) at 6 ¶ 29.

These assertions support an inference that counsel did not explain that he could withdraw his guilty plea and proceed to trial if the Court did not agree that a sentence of 57 months was appropriate.

In the new declaration, prepared with counsel's assistance, Iturbe asserts:

> I did not understand how there could be such a good deal because I knew I did not qualify for the safety valve. I had heard many other inmates tell stories about getting sentences in their cases that were for longer terms than their plea agreements called for. The plea agreement Mr. Rhodes presented to me did not make sense to me. I did not understand how it could be possible. Mr. Rhodes did not explain to me that this type of plea deal was very unusual.
>
> Mr. Rhodes told me I should accept the deal, but he did not explain to me how the law worked. I did not understand that the Court was legally prohibited from going higher than 57 months and I did not know how to ask how such a deal could be possible under the law.

Iturbe Aff. (Doc. 118) at 2–3 ¶¶ 7–8.[3]

These assertions offer a bit more detail but are consistent with Iturbe's original declaration. If this were all Iturbe said, an evidentiary hearing might be required to sort out the discrepancies in detail between his affidavit and trial counsel's affidavit. *See, e.g.*, Rhodes Aff. (Doc. 114-1) at 3 ¶ 13; Letter, Rhodes to Iturbe, Apr. 16, 2015, at 1–2 (Doc. 114-1 at 26–27).

But Iturbe says more:

> Mr. Rhodes told me that I should accept this deal because if I did not I would go to trial and lose and get a lot more time. He told me if I

---

[3] Iturbe does not allege he was deprived of an interpreter. Counsel avers an interpreter was present. *See* Rhodes Aff. (Doc. 114-1) at 4 ¶ 19.

took the deal and the Court sentenced me to more than 57 months, I
could withdraw my plea of guilty and still go to trial.

Iturbe Aff. at 2 ¶ 6.

This paragraph shows that counsel told Iturbe "how the law worked." It
worked by allowing Iturbe to withdraw his plea and go to trial if the Court did not
intend to impose a sentence as low as 57 months. *See* Fed. R. Crim. P. 11(c)(5). If
Iturbe was worried that other inmates had received long sentences despite more
favorable terms in their plea agreements, his worry should have disappeared when
counsel gave him the advice he describes.

Iturbe does not claim counsel had reason to know he should address a
concern Iturbe did not (and still does not) articulate. He does not claim he told
counsel he did not understand why he could withdraw his plea when other inmates
had not given him any legal advice about that possibility. He does not even say he
told counsel he was torn between what counsel said and what he had heard from
other inmates. He identifies no statement or omission by counsel that misled him.
Statements by other inmates misled him. Iturbe chose to listen to them and did not
tell counsel he was doing so.

The question for the Court is not whether Iturbe made a good choice or a bad
choice. The question is whether counsel gave him the information he needed to
make his own choice or whether, instead, counsel failed to do so and violated
Iturbe's constitutional right to effective counsel and due process of law. Iturbe

identifies nothing that counsel did or said to mislead him.  He identifies no material

legal or factual information that counsel omitted.  He identifies nothing that he

himself did or said to enlighten counsel to his need for additional clarification.

*See, e.g.*, *United States v. Leasure*, 319 F.3d 1092, 1099–1100 (9th Cir. 2005);

*United States v. Lee*, 362 Fed. Appx. 752, 754 (9th Cir. 2010) (unpublished mem.

disp.).  Iturbe simply rejected counsel's advice.  A client's decision not to follow

counsel's advice does not violate the Sixth Amendment.

A court of law may remedy errors of personal judgment if they are rooted in

legal error.  But Iturbe's allegations meet neither prong of the *Strickland* test.  This

claim is denied.

### III.  Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).

8

Iturbe's claims do not meet the relatively low threshold required for a COA. His first claim alleged that the Court erred by failing to hold an evidentiary hearing on his pretrial motion to suppress. Although this claim is procedurally defaulted, it was addressed on the merits. The argument in the suppression motion relied on the highway patrol officer's report and on video from his dashboard camera to demonstrate a violation of Iturbe's Fourth Amendment rights. The report and video were submitted, and the Court's opinion relied on that same evidence. No one needed or requested an evidentiary hearing. The claim did not show an abuse of discretion, much less a violation of constitutional due process, as required for a COA. *See* Order (Doc. 113) at 5–6.

Iturbe's third claim alleged that appellate counsel had "no reason not to appeal" the denial of his suppression motion. But he alleged no facts supporting an inference that appellate counsel's selection of issues was unreasonable. Nor did he make a viable argument appellate counsel could have pursued. The claim met neither prong of the *Strickland* test. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see also* Order (Doc. 113) at 6–8.

Finally, Iturbe's second claim is defeated by his own affidavit. He admits counsel told him both that the United States offered a plea agreement that would result in a sentence of 57 months if the Court accepted the agreement, and that if the Court did not accept the agreement, he could withdraw his guilty plea and go to

9

trial.  *See supra* at 4–8.

Iturbe does not make a showing of any substance that he was deprived of a constitutional right.  A COA is not warranted.

Accordingly, IT IS ORDERED:

1.  All claims having been denied, Iturbe's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 110) is DENIED.

2.  A certificate of appealability is DENIED.  The clerk shall immediately process the appeal if Iturbe files a Notice of Appeal.

3.  The clerk shall ensure that all pending motions in this case and in CV 18-79-BU-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Iturbe-Gonzalez.

DATED this 6th day of October, 2020.

Dana L. Christensen, District Judge
United States District Court

10